UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| RASHAAD HOGAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:22-cv-00394-JRS-MJD |
| ) | |
| D. WHIPPO, et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Rashaad Hogan is a prisoner currently incarcerated at Wabash Valley Correctional Facility. He alleges in this civil action that the defendants used excessive force against him and prevented him from practicing his religion. Defendants have moved for summary judgment. Dkt. 37. For the reasons below, that motion is **DENIED**.

**I.**
**Standard of Review**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

Plaintiff failed to respond to the summary judgment motion. Accordingly, facts alleged in the motion are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); *see* S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts). "Even where a non-movant fails to respond to a motion for summary judgment, the movant still has to show that summary judgment is proper given the undisputed facts." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (cleaned up).

## II.
## Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Khungar*, 985 F.3d at 572–73.

Mr. Hogan has been a practicing Muslim since 2018 and prays five times a day. Hogan Deposition, dkt. 38-1 at 16-17. On October 8, 2021, he was housed in the Secured Confinement Unit (SCU). That morning, Defendants Hill and Whippo escorted him to an indoor recreation area. *Id*. at 12. Although Defendant Whippo does not recall Mr. Hogan's request, Mr. Hogan testified at his deposition that he told Defendants Whippo and Hill that he needed to be returned to his cell to

2

pray. *Id*. at 15; Whippo Affidavit, dkt. 38-2 at 1. Despite his repeated requests, he was left locked in the recreation area for 2-3 hours. Dkt. 38-1 at 19-22. He could not pray there because he needed to complete a purification ritual in his cell before praying. *Id*. at 18-19. Defendant Hill came to the recreation area and made disrespectful remarks about Mr. Hogan's religion. *Id*. at 23-25. Eventually Defendants Whippo and Hill escorted Mr. Hogan back to his cell, but he had already missed one mandatory prayer time. *Id*. at 26.

Defendants Whippo and Hill cuffed Mr. Hogan's hands behind his back. As they walked, Defendant Whippo stood to the side of Mr. Hogan and Defendant Hill stood behind Mr. Hogan holding the lead strap attached to Mr. Hogan's handcuffs. Dkt. 38-2 at 1-2. Defendants provided a video of the incident which the Court has reviewed. Dkt. 38-3.

Mr. Hogan complained to the officers that the handcuffs were too tight. Dkt. 38-1 at 37. As the group entered the range, Mr. Hogan moved his hand to take a piece of paper from another inmate. Believing that Mr. Hogan was attempting to traffic something, Defendant Whippo instructed him not to grab anything. Dkt. 38-2 at 2. Mr. Hogan's verified complaint states that the other inmate was attempting to give him a piece of paper documenting the times the officers had come on the range but refused to remove Mr. Hogan from the recreation area. Dkt. 1 at 6.

Mr. Hogan's verified complaint states that Defendant Whippo pulled on the lead strap, tightening the handcuffs and causing Mr. Hogan to pull his arms away. Dkt. 1 at 6-7. Mr. Hogan turned his head to ask why Defendant Whippo had pulled on the lead strap. Defendant Whippo pulled on the lead strap again. When Mr. Hogan again turned his head to ask why Defendant Whippo was pulling on the strap, Defendant Whippo slammed Mr. Hogan to the ground without warning. Dkt. 1 at 7.

A review of the video evidence generally supports Mr. Hogan's version of events, although there is no sound to confirm the verbal interactions between Mr. Hogan and Defendants Whippo and Hill. Defendant Whippo attests that Mr. Hogan became belligerent during the escort and that he took Mr. Hogan to the ground after Mr. Hogan defied Defendant Whippo's command to Mr. Hogan to stop turning his head.  Dkt. 38-2 at 2.

Mr. Hogan's verified complaint states that Defendant Whippo forcefully applied pressure to Mr. Hogan's neck and elbows with his forearms and bodyweight, despite the fact that Mr. Hogan was handcuffed on the ground and not resisting. Dkt. 1 at 7; dkt. 38-1 at 38. Mr. Hogan felt his neck pop on the left side. Dkt. 1 at 7. Throughout the incident, Defendant Hill did not attempt to intervene in Defendant Whippo's use of force. *Id*. at 8.

Defendant Martinez and other officers arrived and escorted Mr. Hogan to a holding cell where Defendant Whippo punched him in the rib cage and yelled for Mr. Hogan to stop resisting even though Mr. Hogan was not resisting. *Id*. Defendants Martinez and Hill then joined in beating Mr. Hogan. *Id*.; dkt. 38-1 at 41-44.

After the incident, a nurse began to assess Mr. Hogan's injuries, but lied and said he refused treatment after Defendant Whippo falsely claimed that Mr. Hogan had molested and killed a child. Dkt. 1 at 8-9; dkt. 38-1 at 45-46; Medical Records, dkt. 38-4 at 7. In the following months, Mr. Hogan complained to medical staff that his left shoulder and neck hurt. He was diagnosed with a trapezius strain and bursitis. Dkt. 38-4 at 3, 6.

### III.
### Discussion

    **I.**    **Excessive Force**

The Eighth Amendment protects inmates from cruel and unusual punishment, including

excessive force by prison officials. *McCottrell v. White*, 933 F.3d 651, 662 (7th Cir. 2019). This rule does not bar de minimis force unless the force is "of a sort repugnant to the conscience of mankind." *Wilkins v. Gaddy*, 559 U.S. 34, 37−38 (2010) (per curiam) (cleaned up). Even if the force applied is not de minimis, it remains permissible if used "in a good-faith effort to maintain or restore discipline." *McCottrell*, 933 F.3d at 664 (cleaned up). But malicious or sadistic force—even if it does not cause a serious injury—is prohibited. *Id.* To distinguish between good-faith and malicious force, courts consider several factors, including:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

*Id.* at 663; *see also Whitley v. Albers*, 475 U.S. 312, 321 (1986). These factors are sometimes referred to as the "*Whitley* factors." Additionally, to survive summary judgment, a plaintiff must present evidence supporting "a reliable inference of wantonness in the infliction of pain." *Whitley*, 475 U.S. at 322.

Defendants argue that Defendant Whippo was justified in taking Mr. Hogan to the ground because Mr. Hogan made threatening comments and ignored Defendant Whippo's order for Mr. Hogan to stop turning his head. Defendants further argue that they did not use any force on Mr. Hogan after he was on the ground beyond placing pressure on his back and legs to keep him restrained. But a reasonable juror believing Mr. Hogan's version of events could conclude that the need for force was low, even though Mr. Hogan was "slow to comply with an order." *Lewis v. Downey,* 581 F.3d 467, 477 (7th Cir. 2009) ("[J]ustification [for force] does not necessarily exist every time an inmate is slow to comply with an order."). A reasonable juror could also find that Defendant Whippo did not attempt to temper his use of force by warning Mr. Hogan that he

5

intended to use force if Mr. Hogan did not comply. Finally, a reasonable juror could find that the force caused significant pain and injury that was disproportionate to the conditions giving rise to the use of force.

The video evidence does not depict the alleged events after Mr. Hogan was removed from the range. Material disputes of fact remain regarding whether the Defendants, including Defendant Martinez, used physical force against Mr. Hogan after he was taken to a holding cell and, if so, whether such force was malicious. Thus, the Defendants are not entitled to summary judgment on Mr. Hogan's excessive force claim.

## II. First Amendment Free Exercise Claim

To succeed on his First Amendment free-exercise claim, Mr. Hogan must convince the factfinder that the defendants "personally and unjustifiably placed a substantial burden on his religious practices." *Thompson v. Holm*, 809 F.3d 376, 379 (7th Cir. 2016). "A substantial burden puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* (cleaned up). An isolated instance that impacts an inmate's religious practice will often be "de minimis" and "not of constitutional dimension." *Rapier v. Harris*, 172 F.3d 999, 1006 n.4 (7th Cir. 1999) (denial of pork-free meals on three isolated occasions "does not constitute more than a de minimis burden on [plaintiff's] free exercise of religion").

"[A]n inmate is not entitled to follow every aspect of his religion; the prison may restrict the inmate's practices if its legitimate penological interests outweigh the prisoner's religious interests." *Kaufman v. McCaughtry*, 419 F.3d 678, 683 (7th Cir. 2005). Thus, even a substantial burden is permitted if the burden is "reasonably related to legitimate penological objectives." *Vinning-El v. Evans*, 657 F.3d 591, 592−93 (7th Cir. 2011) (citing *Turner v. Safley*, 482 U.S. 78, 89−91 (1987)). "Courts consider four factors when evaluating a prison policy against a First

6

Amendment claim: (1) whether the policy rationally relates to a legitimate governmental objective; (2) whether the inmate has an alternative means of exercising the right; (3) the impact that accommodating the right will have on security; and (4) whether ready alternatives exist to the prison's policy." *Larry v. Goldsmith*, 799 F. App'x 413, 415 (7th Cir. 2020); *see Turner*, 482 U.S. at 89−91 (outlining similar factors).

Mr. Hogan testified at his deposition that the five daily prayers were mandatory and that he completes them everyday. Dkt. 38-1 at 17. He also testified that the routine of completing the daily prayers helped him "get[] through the day" and combat the negative mental effects of being housed in the SCU. *Id.* at 27. Defendants do not argue that legitimate penological interests outweighed Mr. Hogan's interest in adhering to the prescribed daily prayer schedule. Instead, they only argue that missing one prayer was at most a de minimis impact on Mr. Hogan's ability to practice his religion. Dkt. 39 at 7.

Defendants cite *Rapier v. Harris*, 172 F.3d 999, 1006 n.4 (7th Cir. 1999), to support their argument. In that case, the Seventh Circuit held that the denial of a pork-free meal at three out of over 800 mealtimes imposed at most a de minimis impact on the plaintiff's religious practice. But missing a meal is not the same as missing a prayer time.

The facts in *Larry v. Goldsmith* are more similar to the facts presented here. No. 16-CV-1108-PP, 2019 WL 1116947 (E.D. Wis. Mar. 11, 2019), *aff'd,* 799 F. App'x 413 (7th Cir. 2020). In that case, the district court held that "a jury could reasonably find that making it impracticable for a Muslim to pray at one of the five required times of day constituted a violation of his free exercise rights." *Id.* at *6. Ultimately, the defendants were granted summary judgment, which the Seventh Circuit affirmed, because the defendants had a legitimate penological reason to limit the plaintiff's ability to complete his final prayer of the day. But here, Defendants Whippo and Hill

7

have not made any argument that legitimate penological interests underpinned their failure to return Mr. Hogan to his cell to complete his daily prayers. Thus, they are not entitled to summary judgment.

### IV.
### Conclusion

Defendants' motion for summary judgment, dkt. [37], is **DENIED**. Mr. Hogan's claims will be resolved through settlement or trial if necessary. Because it is the Court's preference that he be represented by counsel for trial or any potential settlement conference, the Court will attempt to recruit counsel to represent the plaintiff. The plaintiff shall have **through September 19, 2024,** in which to file a motion for recruitment of counsel or object to the recruitment of counsel on his behalf. **The clerk is directed** to include the motion for counsel form with the plaintiff's copy of this Order.

**IT IS SO ORDERED.**

Date: 09/13/2024

_JAMES R. SWEENEY II, JUDGE_
United States District Court
Southern District of Indiana

Distribution:

RASHAAD HOGAN
166825
INDIANA STATE PRISON
INDIANA STATE PRISON
Electronic Service Participant – Court Only

Carlton Wayne Anker
Lewis and Wilkins LLP
anker@lewisandwilkins.com

Jordan Douglas Hall
Lewis and Wilkins LLP
hall@lewisandwilkins.com

Eric Ryan Shouse
Lewis And Wilkins LLP
shouse@lewisandwilkins.com